UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
IN ADMIRALTY
CIVIL ACTION NO. _____

| | |
|---|---|
| CAROTRANS INTERNATIONAL, INC., <br><br>Plaintiff, <br><br>v. <br><br>CAROLINA RECYCLE PARTNERS, LLC, BENJAMIN NEAL COOPER, DAVID CARL BRINKLEY, DAVID NEAL RUFF & DAVID ALLEN SCOTT, <br><br>Defendants | **COMPLAINT** |

COMES NOW, Plaintiff CAROTRANS INTERNATIONAL, INC. ("Plaintiff"), by and through Counsel, and for its Complaint against CAROLINA RECYCLE PARTNERS, LLC ("Carolina Recycle"), BENJAMIN NEAL COOPER ("Cooper"), DAVID CARL BRINKLEY ("Brinkley"), DAVID NEAL RUFF ("Ruff") & DAVID ALLEN SCOTT ("Scott") alleges the following:

**Jurisdiction and Venue**

1. This action is brought under Rule 9(h) of the Federal Rules of Civil Procedure, under the Admiralty and Maritime Law of the United States and 28 U.S.C. §1333 as Plaintiff seeks to enforce its rights under maritime contracts.

2. On information and belief, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Charlotte Division of the United States District Court for the Western District of North Carolina.

3. Venue is proper in the Charlotte Division of the United States District Court for the Western District of North Carolina.

## I. PARTIES

4. The allegations in the paragraphs above are re-alleged as if fully set forth herein.

5. Plaintiff Carotrans International, Inc. is a corporation with a principal place of business located at 100 Walnut Avenue, Suite 202, Clark, New Jersey 07066.

6. On information and belief, Defendant Carolina Recycle Partners, LLC ("Carolina Recycle") is a North Carolina Limited Liability Company with its principal place of business located at 101 Plum Street, Belmont, NC 28012.

7. On information and belief, Defendant Benjamin Neal Cooper ("Cooper") is an individual resident of Union County, North Carolina with a residence located at 7403 Spice Bush Ct., Waxhaw, NC 28173.

8. On information and belief, Defendant Cooper was, at all times material hereto, the president of Carolina Recycle.

9. On information and belief, Defendant Cooper was, at all times material hereto, an agent of Carolina Recycle.

10. On information and belief, Defendant David Carl Brinkley ("Brinkley") is an individual resident of Cleveland County, North Carolina with a residence located at 413 Country Club Rd., Kings Mountain, NC 28086.

11. On information and belief, Defendant Brinkley was, at all times material hereto, a member and manager of Carolina Recycle.

12. On information and belief, Defendant Brinkley was, at all times material hereto, an agent of Carolina Recycle.

13. On information and belief, Defendant David Neal Ruff ("Ruff") is an individual resident of Washington County, Arkansas with a residence located at 1850 Silverado Pl., Springdale, AR 72762.

14. On information and belief, Defendant Ruff was, at all times material hereto, a member and manager of Carolina Recycle.

15. On information and belief, Defendant Ruff was, at all times material hereto, an agent of Carolina Recycle.

16. On information and belief, Defendant David Allen Scott ("Scott") is an individual resident of Mecklenburg County, North Carolina with a residence located at 6748 Benningwood Dr., Charlotte, NC 28270.

17. On information and belief, at all times material hereto, Defendant Scott was a member and manager of Carolina Recycle.

18. On information and belief, at all times material hereto, Defendant Scott was an agent of Carolina Recycle.

19. Plaintiff is, and was at all times material hereto, a Non-Vessel Operating Common Carrier ("NVOCC") licensed with the Federal Maritime Commission under License No. 016017, engaged in the business of arranging for the shipment of goods in international maritime commerce, including between ports in the United States and Asia under applicable tariffs.

20. Plaintiff, as an NVOCC is, and was at all times material hereto, a common carrier that holds itself out to the public to provide ocean transportation, issues its own house bills of lading or equivalent documents and does not operate the vessels by which ocean transportation is provided.

21. As an NVOCC, Plaintiff is a shipper in its relationship with vessel operating carriers involved in the movement of cargo.

## III. FACTS

22. The allegations in the paragraphs above are re-alleged as if fully set forth herein.

23. On or about 17 November 2016, Defendant Cooper on behalf of Defendants requested that Plaintiff arrange for the shipment of a cargo of "reclaimed rubber" from Rutherfordton, North Carolina to Ningbo, China.

24. Following receipt of this request alleged in Paragraph 23, Plaintiff provided Defendants, through Defendant Cooper, a rate proposal (the "Rate Proposal") with an effective date of 17 November 2016, which expressly provided that "All transportation services provided are subject to the terms and conditions of the carrier's bill of lading and any applicable tariff." *See* **Ex. 1.**

25. The terms and conditions of Plaintiff's bill of lading are available on Plaintiff's website and had been provided to Defendants, through Defendant Cooper, on multiple occasions with past shipments.

26. A true and accurate copy of the terms and conditions of Plaintiff's bill of lading is attached as **Exhibit 2** (the "Terms and Conditions").

27. According to the Terms and Conditions, *inter alia*:

    a. "'Charges' mean[s] freight, deadfreight, demurrage and all expenses and money obligations incurred and payable by the Merchant."

- b. "Merchant" means the shipper, consignee, receiver, holder of this Bill of Lading, owner of the cargo or person entitled to the possession of the cargo and the servants and agents of any of these, all of whom shall be jointly and severally liable to the Carrier for the payment of all Charges, and for the performance of the obligations of any of them under this Bill of Lading.
- c. "The Merchant and the Goods themselves shall be liable for and shall indemnify the Carrier, and the Carrier shall have a lien on the Goods for all expenses of mending, repairing, fumigating, repacking, coopering, baling, reconditioning of the Goods and gathering of loose contents, also for expenses for repairing Containers damaged while in the possession of the Merchant, for demurrage on Containers and any payment, expense, fine, dues, duty tax, import, loss, damage or detention sustained or incurred by or levied upon the Carrier, Vessel or any action or requirement of any government or governmental authority or person purporting to act under the authority thereof, seizure under legal process or attempted seizure, incorrect or insufficient marking, numbering or addressing of Containers or other packages or description of the contents, failure of the Merchant to procure consular, Board of Health or other certificates to accompany the Goods or to comply with laws or regulations of any kind imposed with respect to the Goods by the authorities at any port or place or any act or omission of the Merchant. The Carrier's lien shall survive delivery and may be enforced by private or public sale and without notice," and
- a. "The Merchant shall defend, indemnify and hold harmless the Carrier, any Participating carrier, independent contractor, their agents and servants, against any loss, damage, claim, liability or expense whatsoever arising from any breach of the provisions of this Clause 7. or from any cause in connection with the Goods for which the Carrier is not responsible.

28. On or about 17 November 2018, the Rate Proposal was accepted on behalf of Defendants and Defendants were provided a booking confirmation assigning booking number **FCLNIN1648002** to the shipment (the "First Shipment") which listed Carolina Recycle as the First Shipment's "Shipper" (and therefore a "Merchant" per the Terms and Conditions), again referenced the Terms and Conditions, and requested that the Shipper provide a VGM (i.e., Verified Gross Mass) on behalf of the Shipper for the shipment in order to comply with SOLAS Regulation VI/2. **Ex. 1**

29. On 22 November 2016, Plaintiff requested that Defendant Cooper provide the number of containers Defendants would need for the First Shipment.   **Ex.3**

5

30. On 23 November 2016 Defendant Cooper confirmed that 8 containers were needed to carry the First Shipment. **Ex. 3.**

31. On 5 December 2016, Plaintiff advised Defendants, through Defendant Cooper, that one of the containers making up the First Shipment had been overloaded by Carolina Recycle and would need to be brought back, unpacked and re-loaded and advised that any associated costs would be for Carolina Recycle's account; Defendant Cooper accepted the same and did not protest. **See Ex. 3.**

32. On 12 December 2016, Plaintiff informed Defendants, through Defendant Cooper, that it needed the Shipper to provide the VGM for the First Shipment and that if the proper paperwork was not submitted by the Shipper, the shipment may have to be moved to another vessel. **Ex. 4**.

33. In response to Plaintiff's request for the Shipper to provide the First Shipment's VGM, and without protest, Defendant Cooper provided Carolina Recycle's invoice for the cargo, which included its weight and also warranted that Carolina Recycle had "title to the waste" described in the invoice. **Ex. 4.**

34. The bill of lading and freight invoice for the First Shipment are attached as **Exhibit 5**.

35. When Plaintiff transmitted the bill of lading and freight invoice referenced in paragraph 34 above to Defendants, through Defendant Cooper, it also included a copy of the Terms and Conditions. *See* **Ex. 5**.

36. Neither Carolina Recycle nor any other Defendant raised any protest to the Terms and Conditions.

37. The First Shipment sailed with an ocean carrier on 16 December 2017.

6

Case 3:18-cv-00448-RJC-DSC   Document 1   Filed 08/15/18   Page 6 of 16

38. On or about 13 January 2017, Defendant Cooper, on behalf of Defendants, requested that Plaintiff arrange for the shipment of an additional shipment of a cargo of reclaimed rubber from Rutherford, North Carolina to Ningbo, China (the "Second Shipment").

39. On or about 15 January 2017, Defendants were provided a booking confirmation, through Defendant Cooper, assigning booking number **FCLNIN1705001** to the Second Shipment, which listed Carolina Recycle as the shipment's Shipper (and therefore a "Merchant" per the Terms and Conditions), referenced the Terms and Conditions, and requested that the Shipper provide a VGM on behalf of the Shipper for the shipment in order to comply with SOLAS Regulation VI/2. **Ex. 6**.

40. On or 17 January 2017 Defendant Cooper contacted Plaintiff with respect to the Second Shipment's status as he "*had not heard anything from the trucker*" and provided Plaintiff with information with respect to Carolina Recycle's loading schedule and its need to load trucks. **Ex. 7**.

41. On 18 January 2017, Defendant Cooper spoke with Plaintiff's dispatcher and requested that Plaintiff arrange a "drop and pickup" arrangement for the Second Shipment instead of a "live" load. **Ex. 7.**

42. On 18 January 2017, Plaintiff provided Defendants, through Defendant Cooper, a quote for the cost for the "drop and pickup" service and Defendant Cooper, on behalf of Defendants, agreed to the price for this change in service for the Second Shipment. **Ex. 7.**

43. On 18 January 2017, Defendants, through Defendant Cooper, informed Plaintiff that "*we may need to roll some of these [containers making up the Second Shipment] into a new booking . . . because of the paperwork issues when we try to load right to the cut off.*" **Ex. 7**.

7

Case 3:18-cv-00448-RJC-DSC   Document 1   Filed 08/15/18   Page 7 of 16

44. On 25 January 2017, due to its need for Defendants to provide the VGM for the Second Shipment and a previous overweight container, Plaintiff re-iterated its request that Defendant Cooper provide the weight of the containers, which he provided on behalf of Defendants. **Ex. 7**.

45. On 26 January 2017, Plaintiff informed Defendants, through Defendant Cooper, that one of the containers making up the Second Shipment was overweight and would not be allowed on the port; Defendant Cooper proposed that the contents of the overweight container be either stored in a warehouse or *"trashed."* **Ex. 7**

46. On 30 January 2017, Plaintiff again re-iterated its need for Defendants to provide the documents certifying the weight of the cargo so that it could obtain the VGM for the Second Shipment, and Defendants, through Defendant Mr. Cooper, again provided the requisite documents to Plaintiff on 30 January 2017. **Ex. 8**.

47. The documents provided by Defendant Cooper for the Second Shipment warranted Carolina Recycle's title to the goods making up the Second Shipment. **Ex 8**.

48. The bill of lading and freight invoice for the Second Shipment are attached as **Exhibit 9**.

49. When Plaintiff transmitted the bill of lading and freight invoice referenced in paragraph 48 above to Defendants, through Defendant Cooper, it also included a copy of the Terms and Conditions. *See* **Ex. 9**.

50. The Second Shipment sailed with an ocean carrier on 29 January 2017.

51. On or before 26 January 2017, Defendant Cooper, on behalf of Defendants, requested that Plaintiff arrange for the shipment of an additional shipment of a cargo of reclaimed rubber from Rutherfordton, North Carolina to Ningbo, China (the "Third Shipment").

52. On or about 26 January 2017, Defendants were provided a booking confirmation assigning booking number **FCLNIN1707002** to the Third Shipment which listed Carolina Recycle as the shipment's Shipper (and therefore a "Merchant" per the Terms and Conditions), referenced the Terms and Conditions, and requested that the Shipper provide a VGM on behalf of the Shipper for the shipment in order to comply with SOLAS Regulation VI/2. **Ex. 10.**

53. On or about 9 February 2017, after Carolina Recycle was issued the final bill of lading for the First Shipment and provided an additional copy of the Terms and Conditions, Plaintiff reminded Mr. Cooper of the need for the Shipper to certify the VGM for the Third Shipment. **Ex. 11**.

54. On 11 February 2017 Defendant Cooper submitted to Plaintiff the paperwork required of shippers for certification of the VGM for the Third Shipment, again reaffirming Carolina Recycle's status as the shipper of the Third Shipment, and warranted its title to the "waste." **Ex. 11**.

55. The bill of lading and freight invoice for the Third Shipment are attached as **Exhibit 12**.

56. When Plaintiff transmitted the bill of lading and freight invoice referenced in paragraph 55 above to Defendants, through Defendant Cooper, it also included a copy of the Terms and Conditions. *See* **Ex. 12**.

57. The Third Shipment sailed with an ocean carrier on 14 February 2017

58. On or about 18 January 2017, Defendant Cooper, on behalf of Defendants, requested that certain of the containers which were initially booked under Booking No. **FCLNIN1705001** (i.e., the Second Shipment) be included under a new booking. **Ex. 13**.

59. Plaintiff informed Defendants, through Defendant Cooper, that the request in paragraph 58 above could be accommodated. **Ex. 13**.

60. On or about 20 January 2017, following the agreement to try to accommodate Defendant's request, Defendants, through Defendant Cooper, informed Plaintiff that he hoped "*this starts moving, we really need the space*." **Ex. 13**.

61. On 30 January 2017, Plaintiff informed Defendants, through Defendant Cooper, that container **BMOU6309112** did not make its intended departure due to being overloaded, would have to sail on the next available vessel and would incur additional charges. **Ex. 13**.

62. On or about 30 January 2017 Plaintiff then provided Defendants, through Defendant Cooper, the booking confirmation for shipment No. **FCLNIN1706003**, listing Carolina Recycle as the Shipper, such that container **No. BMOU6309112** could sail (the "Fourth Shipment") and asked Defendants, through Defendant Cooper, to provide the paperwork necessary for the Fourth Shipment's VGM. **Ex. 13**.

63. On 1 February 2017, Defendant Cooper submitted to Plaintiff the paperwork required of shippers for certification of the VGM for the Fourth Shipment, reaffirming Carolina Recycle's status as the shipper of the Fourth Shipment, and warranting its title to the "waste." **Ex. 14.**

64. The bill of lading and freight invoice for the Fourth Shipment is attached as **Exhibit 15**.

65. When Plaintiff transmitted the bill of lading and freight invoice referenced in paragraph 64 above to Defendants, through Defendant Cooper, it also included a copy of the Terms and Conditions. *See* **Ex. 15**.

66. The Fourth Shipment sailed with an ocean carrier on 27 February 2017.

67. On or about 21 February 2017, Defendant Cooper, on behalf of Carolina Recycle, requested that Plaintiff arrange for the shipment of an additional shipment of a cargo of reclaimed rubber from Rutherfordton, North Carolina to Haiphong, Vietnam (the "Fifth Shipment").

68. On or about 21 February 2017, Defendants, through Defendant Cooper, were provided a booking confirmation assigning booking number **FCLHPH1709002** for the Fifth Shipment which listed Carolina Recycle as the shipment's Shipper (and therefore a "Merchant" per the Terms and Conditions), referenced the Terms and Conditions, and requested that the Shipper provide a VGM on behalf of the Shipper for the shipment in order to comply with SOLAS Regulation VI/2. **Ex. 16.**

69. On or about 21 February 2017, Defendant Cooper informed Plaintiff that Defendants *"need[ed] to roll this booking"* (i.e., the Fifth Shipment) because Defendants did *"not have 8 containers ready yet."* **Ex. 17**.

70. Based on the statement in paragraph 69, above, , Plaintiff provided Defendants, through Defendant Cooper, a new booking confirmation for the Fifth Shipment for a later sailing date, again listing Carolina Recycle as the "Shipper" and requesting the information for the VGM. **Ex. 17**.

71. On or about 2 March 2017, Mr. Cooper requested the following of Plaintiff: *"Please roll this booking for 2 more weeks. We will be ready to ship in 2 weeks. Thanks."* **Ex. 18**.

72. Based on the above request, Plaintiff provided Defendants, through Defendant Cooper, a third booking confirmation for the Fifth Shipment for a later sailing date, again listing Carolina Recycle as the "Shipper" and requesting the information for the VGM. **Ex. 18**.

73. On 20 March 2017, Plaintiff sent Defendants, through Defendant Cooper, a reminder that the Shipper needed to provide a VGM for the Fifth Shipment or risk the shipment being rolled (i.e., moved) to a later vessel, which may result in extra fees. **Ex. 19.**

74. On 20 March 2017, Defendants, through Defendant Cooper, responded to the statement in paragraph 73, above, and asked Plaintiff: "*Can I send some documentation to hold the place while I finish getting all the exact weights?*" **Ex. 19.**

75. Later in the day on 20 March 2017, Defendants, through Defendant Cooper, complied with the VGM requirement and submitted the cargo's weight, value, and the container numbers and warranted title to the cargo making the Fifth Shipment to Plaintiff. **Ex. 19**.

76. The bill of lading and freight invoice for the Fifth Shipment is attached as **Exhibit 20**.

77. When Plaintiff transmitted the bill of lading and freight invoice referenced in paragraph 76 above to Defendants, through Defendant Cooper, it also included a copy of the Terms and Conditions. *See* **Ex. 20**.

78. The Fifth Shipment sailed with an ocean carrier on 24 March 2017.

79. The First, Second, Third, Fourth, and Fifth Shipments (collectively the Subject Shipments) all reached their intended destinations as requested by Defendants through Defendant Cooper.

80. The Subject Shipments were not claimed by the their consignees within the free time allowed at their destinations, resulting in claims by the various ocean carriers for detention, demurrage and other charges for which Plaintiff was liable under the ocean carriers' applicable bills of lading, tariffs and agreements.

81. On information and belief, the Subject Shipments contained material that was illegal to import into China and / or Vietnam at the time of their arrival.

82. When the Subject Shipments' free time at the ports of arrival expired, Plaintiff contacted Defendants, through Defendant Cooper, and informed them that the Subject Shipments had not been claimed and the same would need to be returned to Carolina Recycle's facility unless another location which would take them was identified.

83. In response, Defendants, through Defendant Cooper, informed Plaintiff that return of the Subject Shipments to Carolina Recycle's facility would be at act of trespassing and refused to accept back the Subject Shipments.

84. With detention and other charges increasing, Plaintiff and the ocean carriers of the Subject Shipments deemed the Subject Shipments abandoned and had them disposed of in commercially reasonable ways.

85. Since Plaintiff was the shipper in its relationship with the ocean carriers of the Subject Shipments, it had no choice but to acknowledge its liability to the ocean carriers for the Subject Shipments' detention, demurrage, disposal costs and other costs, and on numerous times requested that Carolina Recycle take responsibility for the Subject Shipments in order to mitigate damages.

86. Defendants always rejected the damages mitigation requests, and never took responsibility for any of the Subject Shipments.

87. Since the consignees did not claim the Subject Shipments and Defendants failed to cooperate with respect to the return and / or disposal of the Subject Shipments, Plaintiff had to make payments to ocean carriers totaling $287,709.28 to settle claims for detention demurrage, disposal costs and other costs related to the Subject Shipments.

## COUNT I
## Breach of Contract – Failure to Pay Charges

88. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above of this Complaint as though fully restated herein.

89. Plaintiff and Defendants entered into a series of maritime contracts under which Plaintiff agreed to ship the Subject Shipments in maritime commerce in exchange for the payment of freight charges (the Contracts of Carriage).

90. Outstanding freight charges for the Subject Shipments are owed to Plaintiff in an amount of $30,506.91. **Ex. 21**.

91. Plaintiff incurred "Charges" under the Contract of Carriage when it was held liable by the Subject Shipments' ocean carriers for detention, demurrage, disposal costs and other costs related to the Subject Shipments and settled such claims for the Charges of $287,709.28.

92. The Contracts of Carriage were all subject to the Terms and Conditions.

93. Carolina Recycle was the shipper of the Subject Shipments and therefore a Merchant under the Terms and Conditions of the Bills of Lading which governed the Contracts of Carriage and is therefore liable to Plaintiff for Charges of $318,216.19 which it has failed to pay in breach of the Parties' Contracts of Carriage.

94. Defendants Cooper, Ruff, Brinkley and Scott, at all times material hereto, were each and all agents of Carolina Recycle, and therefore "Merchants" under the Terms and Conditions which governed the Parties' contracts, and are therefore jointly and severally liable with Carolina Recycle for the Charges of $318,216.19 which have not been paid by any Defendant.

## COUNT II
## **Breach of Contract - Contractual Indemnity**

95. Plaintiff repeats and re-alleges the allegations contained in paragraphs above of this Complaint as though fully restated herein.

96. Under the Terms and Conditions, Carolina Recycle, and each of its agents, Defendants Cooper, Neal, Ruff and Scott, jointly and severally, agreed to defend, indemnify and hold harmless Plaintiff from any cause in connection with the Subject Shipments for which Plaintiff was not responsible.

97. Once the Plaintiff was presented with claims for the Charges for detention, demurrage, disposal costs, and other costs for the Subject Shipments, it notified Defendants of such claims, through Defendant Cooper, and requested their help in resolving all such claims.

98. The claims referenced in paragraph 96 above were due to acts and omissions for which Plaintiff was not responsible.

99. Defendants took no action to resolve the claims for the Charges or defend, hold harmless and indemnify Plaintiff, and actually went to so far as to threaten legal action against Plaintiff if Plaintiff returned the Subject Shipments to Carolina Recycle's facility.

100. As a proximate result of Defendants' failure to defend, hold harmless and indemnify Plaintiff with respect to the Charges and claims made by the ocean carriers of the Subject Shipments, in addition to the Charges of $318,216.19, Plaintiff has incurred expenses, costs and reasonable attorney's fees in resolving the ocean carriers' claims for which Defendants Carolina Recycle, Cooper, Ruff, Scott and Neal are jointly and severally liable under the Contracts of Carriage.

WHEREFORE Plaintiff respectfully requests that the Court enter judgment against Defendants, jointly and severally, as follows:

(i) That judgment be entered against Defendants Carolina Recycle, Cooper, Ruff, Scott and Neal, jointly and severally, in the amount of at least $318,216.19;

(ii) That Plaintiff be awarded its costs and attorney's fees in this matter;

(iii) That the Court grant Plaintiff all further relief that it deems necessary and proper.

Dated 15 August 2018.

CLARK, NEWTON & EVANS, P.A.
*Counsel for Plaintiff*
By:

/s/ Seth P. Buskirk
NC Bar No. 36664
spb@clarknewton.com
509 Princess St.
Wilmington, North Carolina 28401
Telephone: (910) 762 8743
Facsimile:   (910) 762 6206